UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ZHENG NAN JIN, on behalf of himself, and
others similarly situated,

                           Plaintiff,

       - against -

SPA CASTLE, INC. and STEVE S. CHON,

                        Defendants.
-------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

14 CV 5545 (CLP)

      On September 22, 2014, plaintiff Zheng Nan Jin ("Jin") commenced this class and

collective action on behalf of himself and all other similarly situated non-exempt employees of

defendants Spa Castle, Inc. ("Spa Castle"), and Steve S. Chon[1] (the "individual defendant"),

seeking unpaid minimum and overtime wages under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 216(b) et. al, and New York Labor Law ("NYLL").  Plaintiff claims that he and the

others were misclassified as exempt commissioned employees under the FLSA, and therefore

were denied minimum and overtime wages to which they were otherwise entitled.  See 29 U.S.C.

§ 207(i).

      On June 27, 2016, the parties consented to transfer jurisdiction over this action to the

undersigned.  Currently pending before this Court is plaintiff's motion, on defendants' consent,

requesting the following: 1) preliminary approval of the Settlement Agreement and Release that

applies to the 95 individuals who opted into the action; 2) certifying a class consisting of 95

individuals who opted into the action under Federal Rules of Civil Procedure 23(a) and (b)(3) for

purposes of effectuating the settlement; 3) appointment of plaintiff's counsel as class counsel;

---

[1]Plaintiff alleges that Mr. Chon is the Spa Castle's C.E.O.

and 4) approval of plaintiff's proposed notice of pendency of class action and proposed

settlement.  (Pl.'s Notice[2] at 1).


FACTUAL BACKGROUND

Defendants operate a spa and sauna complex, located at 131-10 11th Avenue in College

Point, N.Y., under the name "Spa Castle."  (Compl.[3] ¶ 6; Pl.'s Mot. Cert.[4] at 2).  Spa Castle, a

corporation organized under the laws of the State of New York, provides spa, foot and body

massage, sauna and bath, catering, and entertainment services.  (Compl. ¶ 6).

Plaintiff was employed by defendants as a foot massage technician from approximately

May 2007 until June 20, 2014.  (Jin Decl.[5] ¶ 1; Compl. ¶ 22; Pl.'s Mot. Cert. at 2).  Plaintiff

alleges that during the time of his employment, he was a non-managerial employee.  (Jin Decl. ¶

1).  Plaintiff further alleges that during his employment, he regularly worked approximately sixty

(60) hours per week but did not receive a salary or hourly pay.  (Jin Decl. ¶ 2; Pl.'s Mot. Cert. at

2).  Instead, he was paid only commissions and tips.  (Jin Decl. ¶ 2; Pl.'s Mot. Cert. at 2).  During

the period beginning in 2008 and continuing until 2010, plaintiff asserts that he received $10.00

in commissions for each 30 minute massage he completed and $18.00 in commissions for each

---

[2]Citations to "Pl.'s Notice" refer to the Notice of Plaintiff's Motion for Preliminary
Approval of Class Action Settlement, filed August 1, 2016.

[3]Citations to "Compl." refer to Plaintiff's Complaint, filed November 22, 2014.

[4]Citations to "Pl.'s Mot. Cert." refer to plaintiff's Memorandum of Law in Support of
Plaintiff's Motion for Conditional Collective Certification, dated February 6, 2015.

[5]Citations to "Jin Decl." refer to the Declaration of Zheng Nan Jin, dated January 15,
2015.

2

60 minute massage.  (Jin Decl. ¶ 2).  In 2010, and continuing until the end of his employment, plaintiff received $8.23 in commissions for 30 minute massages, and $13.40 for each 60 minute massage.  (Id.)

Plaintiff contends that during his term of employment at Spa Castle, he received total weekly commissions varying between $300 and $650.  (Id.)  Other than commissions and tips from customers, he was not paid any other compensation.  (Id.)  He also claims that during the period of his employment, he regularly worked a schedule of 11 hours per day, including a one-hour break, six days a week, for a total of around 60 hours per workweek.  (Id. ¶ 3).  Plaintiff alleges that he was not paid minimum wages nor was he paid overtime wages for hours worked over 40 in a workweek.  (Id. ¶¶ 4, 5).  Specifically, plaintiff argues that defendants were not entitled to deny him overtime pay pursuant to the commissioned employee exemption, since one of the requirements of the exemption is that the employee's regular rate of pay is "in excess of one and one half times the minimum hourly rate," which, plaintiff alleges, was not the case here.  (Pl.'s Mem. at 3 (quoting 29 U.S.C. § 207(i))).

Plaintiff claims that the wage statements actually reflect the total amount of commissions that he received during any given pay period and a review of these wage statements shows that his regular rate of pay never exceeded one and one-half times the prevailing minimum hourly rate.  (Id. ¶ 7).  By way of example, plaintiff explains that for the time period September 17, 2012 through September 23, 2012, he was paid $486 in commissions and $540 in tips for a total of $1,026.  (Pl.'s Mem. at 4).  Using a 60 hour work week and a total payment of $486 in

commissions,[6] plaintiff calculates his rate of pay at $8.10 an hour, including the hours worked in excess of 40, which was below the minimum overtime rate of $10.875 per hour.  (Id.)

Plaintiff also asserts that he never received proper wage statements reflecting the number of hours worked or the rate of his commissions.  (Jin Decl. ¶ 6; Compl. ¶ 31).  Instead, he claims that the wage statements he received were inaccurate and "fraudulently" indicated that he was paid "Regular" and "Overtime" pay, when in fact, he never received regular hourly wages or overtime.  (Jin Decl. ¶ 6).

Plaintiff states that during the time of his employment with defendants, he observed other non-managerial employees who performed similar work and who were also subject to the same work conditions and pay practices.  (Id. ¶¶ 1-7).  Specifically, plaintiff identifies the following fellow employees who were also foot massage technicians and who he believes were treated the same way: 1) Mingzi Huang; 2) Jin Nu Fang; 3) Shou Ji Quan; 4) Zhe Fan Ju; 5) Zhong Bin Li; 6) John Kim; 7) Hushong Li; 8) Wuishan Quan; 9) Zheng Shan Jin; 10) Xiong Quan Jin; 11) Jin Hua Plain; 12) Yong Xu; and 13) Shan Zi Plain.  (Id. ¶ 2).  In addition, plaintiff alleges that there were several other employees who worked as body scrubbers who were also subjected to similar pay practices; these include:  1) Ri Jin; 2) Hu Zhe Jin; 3) Yin Shu Jin; 4) Gina LNU; and 5) FNU

---

[6]Plaintiff argues that the amount plaintiff received in tips may not be considered in calculating his hourly rate, citing the U.S. Department of Labor's statement that "'tips paid to service employees by customers may never be considered commissions for the purposes of this exemption.'"  (Pl.'s Mem. at 4 n.4) (quoting U.S. Dept. Of Labor, Wage and Hour Division, Fact Sheet #20: Employees Paid Commissions By Retail Establishments Who Are Exempt Under Section 7(I) From Overtime Under The FLSA (2008)).

Choi.[7]  (Id. ¶ 2).[8]  Plaintiff alleges that all of the Covered Employees were paid at similar commission rates, worked the same or similar hours, were not paid base compensation or overtime, and received fraudulent wage statements.  (Id. ¶¶ 2-7).

On February 6, 2015, plaintiff filed a motion to certify the FLSA Collective Action.  On April 4, 2015, the Honorable Margo K. Brodie referred this motion to the undersigned.  On July 6, 2015, this Court entered an Order granting plaintiff's request for conditional collective action certification and ordering the parties to meet and confer on the proposed notice to be sent to the class.

On August 1, 2016, plaintiffs submitted a Motion for Preliminary Approval of Settlement, Conditional Certification of the Settlement Class, Appointment of Class Counsel as Class Counsel, and Approval of Plaintiff's Proposed Notice of Settlement and Class Action Settlement Procedure ("Preliminary Approval Motion").  Pursuant to the Settlement Agreement, the defendants will create a settlement fund of $340,000 (the "Settlement Fund") to resolve the remaining NYLL claims and cover court-approved attorneys' fees and costs, service awards to plaintiffs, Claims Administrator's fees, payroll taxes, and any costs and/or expenses arising out of or related to the litigation.  (See Set. Agr.[9] § 3.1).  Class members will be paid a "proportionate share of the Settlement Fund based on a formula taking into account weeks

---

[7]Plaintiff's Declaration indicates that he does not know Gina's last name, nor does he know Choi's first name.  (Id.)

[8]The foot massage technicians and body scrubbers are hereinafter referred to as the "Covered Employees."

[9]Citations to "Set. Agr." refer to the Settlement Agreement and Release filed on August 1, 2016.

worked for Defendants during the period September 22, 2008 to June 27, 2016." (Id.. ¶ 3.5). The portion of the settlement allocated to class members will range from "$22.62, for a person that worked one week or less, to $7,329.56, for a person that worked the entire class period." (Pl.'s Mem.[10] at 14).  Class Counsel have applied for one third of the Settlement Fund in attorneys' fees, which amounts to $113,333, plus reimbursement in litigation costs and out of pocket expenses incurred by class counsel.[11]  (Id.)  Finally, the Settlement Administrator will seek administration fees of $25,000 in fees out of the Settlement Fund.  (Id. ¶ 3.4).

Defendants are required to deposit the settlement amount into the Settlement Fund in installments by February 10, 2017.  (Id. ¶ 3.1(A)).  If neither party seeks reconsideration of this Order, the "Effective Date" of the settlement will be 30 days after the Order is entered.  (Id. § 1.13(B)(1)).  Thereafter, within 30 calendar days after the Effective Date, the Claims Administrator will disburse settlement checks to Class Members, and pay attorneys' fees and costs, and service awards to the named plaintiffs.  (Id. § 2.10).

On October 11, 2016, the parties appeared for a fairness hearing in which the Court provisionally found the settlement to be fair and reasonable under the FLSA and informed the parties that the Court would enter a formal written order of preliminary approval of the class settlement.

---

[10]Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement and Approval of Proposed Notice of Settlement filed on August 1, 2016.

[11]The Settlement Agreement states that the Settlement Amount includes attorneys' fees of $113,333 "plus additional costs and expenses" but does not specify the amount of these litigation costs.  (Set. Agr. ¶ 3.2).

<u>DISCUSSION</u>

I.  <u>Rule 23 Class Certification</u>

Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:  (1) the
> class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiffs must also satisfy one of the three

subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or

would substantially impair the ability of other individuals to protect their interests; (2) injunctive

or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or

fact predominate over individual questions and a class action is superior to other methods for

bringing suit.  Fed. R. Civ. P. 23(b).  <u>See generally</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S.

591 (1997).  It is plaintiff's burden to establish compliance with the requirements of Rule 23, but

in analyzing the issue of certification, the court accepts as true the allegations in the complaint

regarding the merits of the claim.  See <u>D'Alauro v. GC Servs. Ltd. P'ship</u>, 168 F.R.D. 451, 454

(E.D.N.Y. 1996) (citation omitted).  Pursuant to Rule 23(c)(1) of the Federal Rules of Civil

Procedure, "the court can make a conditional determination of whether an action should be

maintained as a class action, subject to final approval at a later date."  <u>Collier v. Montgomery</u>

<u>Cnty. Hous. Auth.</u>, 192 F.R.D. 176, 181 (E.D. Pa. 2000).

A.   The Requirements of Rule 23(a)

1.   Numerosity

In this case, there appears to be no dispute that the numerosity requirement of Rule 23(a)

has been satisfied.  As noted, there are 95 Class Members (see Pl.'s' Mem. at 17), and factors

such as the inconvenience of trying individual actions, as well as the financial resources of

potential class members, weigh heavily in favor of a class action in this case.  See Savino v.

Comput. Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998).

Moreover, the Second Circuit has noted that "numerosity is presumed at a level of 40 members."

Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 115 U.S.

2277 (1995); see also Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 48 (E.D.N.Y.

2010).  Accordingly, the Court finds that the requirement of numerosity has been satisfied.

2.   Common Questions of Fact or Law

In determining whether plaintiffs can show that the claims of the potential Class

Members share common questions of law or fact, the Rule does not require that "'all questions of

law or fact raised be common.'"  Savino v. Comput. Credit, Inc., 173 F.R.D. at 352 (quoting

Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)); Frank v. Eastman

Kodak Co., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (holding that the claims need not be identical

to satisfy the commonality requirement, but that they must share common questions of law or

fact).  There must be a "unifying thread" among the claims to warrant class certification.

Kamean v. Local 363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  As long as

"common questions . . . predominate," any differences in the circumstances raised by individual

8

members will not defeat the requirement of commonality.  In re Sadia, S.A. Sec. Litig., 269

F.R.D. 298, 304 (S.D.N.Y. 2010).  In other words, "there need only be a single issue common to

all members of the class," as the "critical inquiry is whether the common questions lay at the

'core' of the cause of action alleged."  Savino v. Comput. Credit, Inc., 173 F.R.D. at 352.

Here, there are several common legal and factual issues in this case.  Specifically,

plaintiff and the Class Members all bring identical claims, alleging that defendants: (1) failed to

pay plaintiff and the Class Members proper minimum and overtime wages; (2) misclassified

them as exempt commissioned employees; and (3) failed to provide appropriate notices and

paystubs.  (Pls.' Mem. at 18).  As such, the Court finds that there are common issues sufficient to

satisfy the requirements of Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that plaintiff's claims be typical of the claims of the Class.

Typicality has been found "when each class member's claim arises from the same course of

events and each class member makes similar legal arguments to prove the defendant's liability."

Robidoux v. Celani, 987 F.2d at 936.  Typicality is "usually met irrespective of varying fact

patterns which underlie individual claims" so long as the claims of the class representative are

typical of the class members' claims.  Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351

(E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, plaintiff's claims arise from the same factual and legal circumstances that form the

bases of the Class Members' claims.  (Pl.'s Mem. at 19).  First, plaintiff and the Class Members

all allege that defendants failed to pay them in accordance with the NYLL.  (Id. at 1)  Second, it

is alleged that plaintiff and the Class Members performed the same or similar duties at Defendants' sauna and spa facility. (Id. at 19). Third, plaintiff claims that he suffered the same injuries suffered by the other Class Members. Irrespective of any differences in the amounts of minimum or overtime wages owed, plaintiff's claims and the claims of the Class Members all stem from defendants' alleged uniformly wrongful conduct; plaintiff's claims are therefore sufficiently typical to warrant certification.

### 4. Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test. In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992). First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation." Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)). Second, the class members' interests may not be "'antagonistic'" to one another. County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

Here, plaintiff and plaintiff's counsel argue that they are adequate representatives of the class because plaintiff and the Class Members' interests are aligned. (Pl.'s Mem. at 20). In order for a potential or actual conflict to defeat certification, it "must be fundamental." In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted). Based on the nature of plaintiff's claims and on the representation that no conflict of interest exists, the Court finds that plaintiff's claims are so interrelated with those of

the Class Members that plaintiff and plaintiff's counsel will serve as adequate Class

representatives.

    B.  The Requirements of Rule 23(b)(3)

        1.  Common Questions Predominate Over Individual Issues

Plaintiff must also establish that the proposed Class meets the requirements of Fed. R.

Civ. P. 23(b)(3). Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and

common issues must predominate in order to warrant adjudication as a class. Amchem Prods,

Inc. v. Windsor, 521 U.S. at 623. Courts focus on whether there are common questions related to

liability. See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003);

Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007). Even if there

are defenses that affect class members differently, that alone "does not compel a finding that

individual issues predominate over common ones." In re Visa Check/MasterMoney Antitrust

Litig., 280 F.3d 124, 138 (2d Cir. 2001) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208

F.3d 288, 296 (1st Cir. 2000)), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24

(2d Cir. 2006).

In this case, plaintiff alleges that defendants' failure to pay plaintiff and Class Members

minimum wage and proper overtime, as well as provide appropriate notices and pay stubs,

provide a common legal theory that predominate over any factual or legal variation among class

members. (Pl.'s Mem. at 21). Although plaintiff concedes that there may be individual issues

pertaining to the calculation of damages, individual damage calculations do not, by themselves,

predominate over common issues. Roach v. T.L. Cannon Corp., 778 F.3d 401, 408 (2d Cir.

2015) (holding that individualized damages determinations alone did not preclude class certification under the predominance inquiry).  Thus, the Court finds that common questions predominate in this case.


2.  <u>Class Action as Superior Method of Resolution</u>

Additionally, to satisfy Rule 23(b)(3), a plaintiff must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  <u>Brown v. Kelly</u>, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotation marks omitted).  The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(2)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(3)] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In this case, plaintiffs claim that  proceeding as a class action is superior to proceeding through individual adjudication because many Class Members lack the resources to bring claims individually against defendants.  (Pl.'s Mem. at 22).  Furthermore, in this case, there is no indication that the Class Members desire to control their own cases or bring suit on an individual basis.

As a result, the Court accepts that a class action is the superior method of resolution in this case.

### 3.  Class Certification

In light of the foregoing, the Court finds that plaintiff and class members have satisfied the requirements of Rule 23(b)(3).  Pursuant to that provision, the Court grants the motion for class certification for settlement purposes only, consisting of all persons who opted into the action under Rules 23(a) and (b)(3) .

## II.   Appointment of the Class Counsel

The Court also grants the Lee Litigation Group's ("Lee Litigation") request to be appointed as Class Counsel.  In evaluating the adequacy of class counsel, Rule 23(g) requires the Court to consider:  (1) the work done by counsel in investigating the potential claims in the case; (2) counsel's experience in handling similar class actions and other complicated litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will expend to represent the class.  Fed. R. Civ. P. 23(g).  In this case, Lee Litigation has extensive experience litigating and settling wage and hour class and collective actions, and thus the firm is well-versed in the applicable law.  (Pl.'s Mem. at 5).  Moreover, Lee Litigation has performed substantial work in this litigation, identifying, investigating, prosecuting, and settling the claims on behalf of the affected individuals.

Accordingly, the Court finds that proposed Class Counsel satisfy the criteria of Rule 23(g), and appoints them to represent the Class Members in this matter.

## III.   Preliminary Approval of the Class Settlement

The parties seek preliminary approval of the proposed settlement, as memorialized in the

Settlement Agreement.  The settlement is intended to encompass the NYLL claims of the named

plaintiffs and the Class Members.  (<u>See</u> Pl.'s Mem. at 8; <u>see also</u> Settlement Agreement §

3.1(A)).


    A.  <u>Standards</u>

    To grant preliminary approval of a class settlement under Rule 23(e), the Court must

determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of

collusion."  <u>Joel A. v. Giuliani</u>, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); <u>see</u> Fed. R.

Civ. P. 23(e).  Judicial policy favors the settlement and compromise of class actions.  <u>Wal-Mart</u>

<u>Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d 96, 116-17 (2d Cir. 2005); <u>see also</u> <u>In re Warfarin</u>

<u>Sodium Antitrust Litig.</u>, 391 F.3d 516, 535 (3d Cir. 2004).  Whether a settlement is fair is a

determination within the sound discretion of the court.  <u>Levitt v. Rodgers</u>, 257 F. App'x 450, 453

(2d Cir. 2007) (citing <u>In re Ivan F. Boesky Sec. Litig.</u>, 948 F.2d 1358, 1368 (2d Cir. 1991)).

    Generally, approval of a class action settlement involves a two-step process.  First, the

court preliminarily approves the proposed settlement by evaluating the written submissions and

informal presentation of the settling parties and the negotiating process leading to the settlement,

<u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d at 116.  Second, the court holds a fairness

hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ."

<u>Capsolas v. Pasta Res., Inc.</u>, No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

In evaluating a proposed settlement in order to grant preliminary approval, the court need only

find that there is "probable cause" to submit the settlement to the class members and to hold a

fairness hearing.  <u>Hernandez v. Merrill Lynch & Co.</u>, No. 11 CV 8471, 2012 WL 5862749, at *1

(S.D.N.Y. Nov. 15, 2012) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).

The Second Circuit has enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

The court must also determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests."  Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).  In reviewing a proposed settlement, the court has

15

the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

Although the Court is not required to make a finding of fairness as to the underlying settlement at this time, the Grinnell factors are instructive. See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties") (internal quotation marks and citations omitted).

1.  Approval of the Rule 23 Class Settlement - Analysis of Procedural Fairness

The parties represent that the proposed settlement was entered into after extensive arms-length negotiations between counsel, following the exchange of discovery, a thorough investigation of claims and defenses, and in-depth interviews with the plaintiff. (Lee Decl. ¶¶ 6-8). According to the parties, the settlement negotiations began soon after the lawsuit was filed. (Id. ¶ 10). After the parties exchanged documents and the Court granted conditional collective certification, the parties reached a settlement in June 2016, following a settlement conference with the undersigned on April 21, 2016 and two mediation sessions with Ruth Raisfeld of Alternative Dispute Resolution Services. (Id. ¶ 12). Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at

16

116, the Court finds that there was procedural fairness in reaching the proposed settlement.

   2.   Approval of the Rule 23 Class Settlement - Analysis of Substantive Fairness

         (a) Complexity, Expense, and Likely Duration of the Litigation

   Turning to the Grinnell factors, the parties have already expended money and time in

litigating this action for over 2 years, engaging in extensive discovery and motion practice.  The

parties maintain that continuing the litigation further would cause the parties to expend

substantial expenses and delay in an effort to prove damages.  (Pl.'s Mem. at 23).  This suggests

that a trial in this case would be contested and would potentially be long and complicated.

   Moreover, class actions, especially in the context of FLSA claims, are inherently

complex.  See Tiro v. Public House Invs., Nos. 11 CV 7679, 11 CV 8249, 2013 WL 4830949, at

*6 (S.D.N.Y. Sept. 10, 2013) (detailing the complexity and expenses involved in fully litigating

FLSA class claims, and noting that the complexity is a factor in favor of settlement); see also In

re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), aff'd,

236 F.3d 78 (2d Cir. 2001).

   In the absence of a settlement, further litigation in this case would clearly cause additional

expense and delay, and could lead to a fact-intensive trial.  (See Pl.'s Mem. at 22-23).  A trial of

this nature would be lengthy and consume tremendous time and resources since the 95 Class

Members would seek hundreds of pages of payroll summaries and other extensive records for the

Class Period.  (See id.)  The settlement, however, provides substantial monetary relief to the

Class Members in a prompt and efficient manner.  (Id.)  Thus, this factor of potential protracted

litigation favors settlement.

(b) <u>Reaction of Class to Settlement</u>

The reaction of the class to the settlement is an issue that can be addressed only after notice of the proposed Settlement Agreement has been sent to the Class and the time for objections has passed.  Since notice of the Settlement Agreement has not yet been distributed to the Class Members, the Court need not address this issue at this time.

(c) <u>Stage of Proceedings and Amount of Discovery Completed</u>

At this point, the parties have conducted discovery for over two years and engaged in two mediation sessions, which has allowed the parties to assess the fairness and reasonableness of the proposed settlement in light of the relevant provisions of the FLSA and NYLL.  (Lee Decl. ¶ 13). Furthermore, plaintiff's counsel received and analyzed extensive records from defendants, including payroll summaries, wage notices, and human resource files.  (<u>Id.</u> ¶ 8).  When discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored.  <u>Tiro v. Public House Invs.</u>, 2013 WL 4830949, at *7; <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d at 537.  Given the extent of discovery conducted in this case, the Court finds that this factor favors approval of the proposed settlement.

(d) <u>Establishing Liability and Damages and Maintaining the Action through Trial</u>

The risk of establishing liability also favors settling this dispute.  Although plaintiff believes in the strength of his case, plaintiff also believes that a trial would involve significant risks as to damages because of the fact-intensive nature of his FLSA and NYLL claims and

because of the difficulty of maintaining class certification throughout trial.  (Pl.'s Mem. at 13-14).  Defendants' defenses are also quite fact-intensive as well.  Defendants argue that employees were properly compensated and that as commissioned employees, plaintiff and Class Members were properly exempt from the minimum wage and overtime requirements of the FLSA and NYLL.  (Id. at 13).  Additionally, defendants argue that they may not be considered an "employer" under the FLSA.  (Id.)

In light of the foregoing, and considering the risks of appeal and the prolonged nature of the litigation, the Court finds that this factor favors approval of the proposed settlement.

### (e) Ability of Defendants to Withstand Greater Judgment

Plaintiff states that he does not believe that defendants could withstand a significantly greater judgment.  (Pl.'s Mem. at 15).  During a mediation session, defendants disclosed that based on their financial situation, they would have to pay the settlement amount in installments. (Id.)  Plaintiff therefore believes that the possibility of collecting the current settlement is a risk, reducing the likelihood that defendants would be able to pay a larger sum.

### (f) Range of Reasonableness of Settlement Fund

Moreover, there is no way to determine with certainty what amount of damages would be awarded in the event of a successful prosecution of the litigation.  See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (quoting In re "Agent Orange" Prod. Liab. Litig., 597 F.Supp. 740, 762 (E.D.N.Y. 1984) (noting that "[d]ollar amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case"); Republic

Nat'l Life Ins. Co. v. Beasley, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) (citing Milstein v. Werner, 57 F.R.D. 515, 524 (S.D.N.Y. 1972)).

Where the settlement provides "a meaningful benefit" to the class, settlements have been found reasonable.  In re Metlife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."  Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  If the proposed settlement provides a meaningful benefit to the Class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable.  See In re Metlife Demutualization Litig., 689 F. Supp. 2d at 340.

Even absent the risk of establishing damages at trial, the value of the Settlement Fund justifies settling this case.  Under the Settlement Agreement, Class Members will each receive their proportionate share of what remains after deducting from the $340,000 award an award for attorneys' fees and costs, service awards to the named plaintiffs, Claims Administrator's fees, and payroll taxes.  (See Settlement Agreement § 3.1(A)).  Plaintiff estimates that each Class Member will receive approximately $22.62 for each week worked during the period September 22, 2008 through June 27, 2016.  (Pl.'s Mem. at 16).  Given the number of Class Members who may choose to accept the settlement amount and the difficulty in establishing damages, as discussed above (see discussion supra, at 18), the Court finds that the total award appears to be reasonable.

On the basis of the foregoing discussion of the Grinnell factors, the Court provisionally

finds the proposed settlement to be fair and reasonable under the circumstances present in this case.

IV.     Adequacy of Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Under Rule 23(e)(1), the "'[c]ourt has virtually complete discretion as to the manner of giving notice to class members.'"  In re MetLife Demutualization Litig., 689 F. Supp. 2d at 345 (quoting Handschu v. Special Servs. Div., 787 F.2d 828, 833 (2d Cir. 1986)).  In a Rule 23(b)(3) class action such as this, "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" must be provided to the class.  Fed. R. Civ. P. 23(c)(2)(B).[12]  In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort.  417 U.S. at 173-76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to

_____

[12]The Rule further provides that, for any class certified under Rule 23(b)(3), the notice must "concisely and clearly state . . . (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

them in connection with the proceedings.'" Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).

Here, plaintiff states that the proposed Notice of Class Action Settlement provides the following information:  (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner of requesting such exclusion; (7) the binding effect of a class judgment on members under Rule 23(c)(3); (8) the terms of the settlement; (9) an explanation of the allocation of attorneys' fees; and (10) specific information regarding the date, time, and place of the final approval hearing.  (Pl.'s Mem. at 24).

In this case, the Settlement Agreement provides that the Claims Administrator will mail the Notice to the last known address of each Class Member within 30 days of the Court's Order granting preliminary approval.  (Id. at 25).  The Class Administrator will take reasonable steps to obtain the correct address of any Class Members for whom notices are returned as undeliverable. (Id.)  Class Members will have 45 days from the date of mailing the Notices to submit claim forms, opt-out requests, or to comment on, or object to the settlement.  (Id.)  Once the settlement becomes effective, defendants will send the settlement checks to Class members within 30 days. (Settlement § 2.10).

The Court finds the proposed Notice and this means of notification to be sufficient.  The proposed Notice itself would be sufficiently detailed so as to inform the Class members of their rights and obligations, and the method of notice is practical and likely effective in reaching the affected individuals.  See Weinberger v. Kendrick, 698 F.2d at 72 (stating that mailing individual

notices to class members at their last known addresses was a sufficient means of notification under the circumstances). As such, the Court also approves the proposed Notice of Settlement.

## CONCLUSION

Accordingly, for the reasons stated above, the Court grants plaintiff's motion for preliminary approval of the proposed settlement and certification of the class for the purposes of settlement. Additionally, the Court provisionally approves the proposed settlement, as articulated in the Settlement Agreement, approves Lee Litigation Group's request to be appointed as Class Counsel, and approves the proposed Notice of Settlement.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
November 15, 2016

/s/ Cheryl L. Pollak
_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

23